UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER MORGAN-TYRA, and<br>MICHAEL MORGAN, | )<br>)<br>) | |
| Plaintiff, | )<br>) | |
| vs. | )<br>) | Case No. 4:18-CV-01799-AGF |
| CITY OF ST. LOUIS, and OFFICER<br>ANDREI NIKOLOV, | )<br>)<br>)<br>) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This case arises out of the May 8, 2015, shooting of Plaintiff Jennifer Morgan-Tyra ("Morgan-Tyra"), by City of St. Louis ("City") police officer Andrei Nikolov ("Nikolov"). Morgan-Tyra was shot at least nine times and suffered severe injuries, including permanent paralysis. Morgan-Tyra filed suit, joined by her brother, Plaintiff Michael Morgan ("Morgan"), asserting claims under 42 U.S.C. § 1983, § 1985, and Missouri law against Nikolov, in his individual capacity, and against the City for money damages. This matter is before the Court on Defendants' motion (ECF No. 39) to dismiss Plaintiffs' second amended complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court will grant the motion in part and deny it in part.

## BACKGROUND

Taken as true for the purpose of this motion, the facts alleged in the second amended complaint are as follows. On May 8, 2015, at approximately 7:00 p.m.,

2

Morgan-Tyra placed a call to 911 operators to report a break-in of the back door of her childhood home at 4241 Chippewa, by an intruder, Karla Nicholson ("Nicholson"). The home was owned at the time by Jason Tyra, another brother of Morgan-Tyra. Morgan-Tyra was using a lawfully-possessed handgun to protect herself from Nicholson, who was threatening Morgan-Tyra with a large screwdriver. At the time of the shooting, Morgan-Tyra was standing in the hallway pointing her handgun at Nicholson, who had by that time stopped threatening Morgan-Tyra with the screwdriver. Morgan-Tyra instructed Nicholson to remain seated on a bed in the bedroom adjoining the hallway where Morgan-Tyra was located.

At the time of Morgan-Tyra's 911 call, Nikolov and Officer Gregory Buschart[1] were performing their routine duties by responding to calls for assistance made to the 911 operator. Responding to Morgan-Tyra's 911 call, Nikolov entered the residence, approached Morgan-Tyra from behind, and fired his service revolver into her back and other areas, hitting her body at least nine times. Morgan-Tyra suffered severe injuries, including permanent paralysis from the 12th thoracic vertebra down, a medically-induced coma for eight weeks, and other internal injuries requiring extensive surgeries. Morgan was present and in the direction of fire when his sister was shot.

Morgan-Tyra claims that Nikolov opened fire without "probable cause or reasonable suspicion to believe that anyone posed a threat of serious physical harm either to Defendant Nikolov or to any other person." ECF No. 37 ¶ 20. She further alleges that

---

[1] Officer Buschart is not named as a defendant in this lawsuit.

Nikolov failed to identify himself as a police officer and did not give her a reasonable opportunity to follow commands.

Following the shooting, Nikolov and other unidentified members of the St. Louis Police Department obtained warrants for Morgan-Tyra's arrest and took her into custody. Morgan-Tyra claims that the City, through its employees and agents, including Nikolov, provided false and misleading evidence to secure her prosecution and charge her with a Class C Felony of Assault Second Degree on a Law Enforcement Office and Class B Felony of Armed Criminal Action. Morgan-Tyra further alleges that Nikolov and Officer Bushart falsely reported to prosecutors that both officers had identified themselves as police officers prior to the shooting even though a 911 recording demonstrates there was no such identification. On June 5, 2017, the City Circuit Attorney's Office dismissed the charges against Morgan-Tyra.

## ARGUMENTS OF THE PARTIES

Morgan-Tyra asserts § 1983 claims, alleging excessive force against Nikolov (Count I), and municipal liability against the City for a failure to train, supervise or discipline (Count IV). Against both Defendants, Morgan-Tyra also asserts a claim for "unreasonable seizure, false arrest, and violation of substantive due process" under § 1983 (Count II), as well as for civil conspiracy pursuant to 42 U.S.C. § 1985 (Count III). Finally, Morgan-Tyra asserts supplemental state-law claims against both Defendants, alleging common law false imprisonment (Count V), malicious prosecution (Count VI), abuse of process (Count VII), and negligent infliction of emotional distress (Count VIII).

Morgan asserts state-law claims against both Defendants, alleging intentional infliction of emotional distress (Count IX) and, in the alternative, negligent infliction of emotional distress (Count X).

Plaintiffs allege that the City has waived sovereign immunity with respect to the state-law claims by obtaining insurance, pursuant to Mo. Rev. Stat. § 537.610, from the Public Facilities Protection Corporation ("PFPC") to insure the City against all claims and that the coverage constitutes insurance or, in the alternative, a self-insurance plan.

The City and Nikolov move to dismiss the second amended complaint for failure to state a claim upon which relief can be granted. With regard to the excessive force claim, Nikolov argues that he is entitled to qualified immunity because, based on the facts alleged, he reasonably believed Morgan-Tyra posed an imminent threat of serious harm to Nicholson, and as such, his conduct did not violate clearly established law. Regarding the claim of unreasonable seizure, false arrest, and violation of substantive due process, Nikolov argues that Morgan-Tyra's claim is foreclosed, as state prosecution without probable cause does not violate substantive due process, relying on *Albright v. Oliver*, 510 U.S. 266, 275 (1994). However, as Defendants' motion does not address Morgan-Tyra's claims of false arrest and unreasonable seizure against Nikolov, the Court will assume that Nikolov does not challenge these claims. Finally, Nikolov argues that all of Plaintiffs' state-law claims against him are barred by Missouri's official immunity doctrine, and that the negligent infliction of emotional distress claims should be dismissed as Missouri law does not permit negligence claims to be premised on an intentional act, such as the shooting here.

The City moves to dismiss Morgan-Tyra's § 1983 claims for failure to train, supervise, or discipline, and also for unreasonable seizure, false arrest, and violation of substantive due process, arguing that the second amended complaint fails to adequately allege municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). The City also moves to dismiss Morgan-Tyra's § 1985 conspiracy claim, arguing that it is barred by the intracorporate conspiracy doctrine, citing *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1078 (8th Cir. 2016). The City contends that, as the Eighth Circuit held in *Kelly*, a local government entity cannot conspire with itself through its agents acting within the scope of their employment. The City further argues that Morgan-Tyra has alleged no facts showing that the Defendants reached an agreement to violate her constitutional rights.

Next, the City argues that Plaintiffs' state-law claims are barred by sovereign immunity, and that the insurance exception under Mo. Rev. Stat. § 537.610 does not apply here. Finally, the City, like Nikolov, argues that Plaintiffs' negligent infliction of emotional distress claims cannot proceed in light of the allegations of an intentional act.

## **DISCUSSION**

To survive a motion to dismiss, a plaintiff's claims must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). But "[c]ourts are not bound to

accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

**Excessive Force Claim Against Nikolov Under § 1983 (Count I)**

"Qualified immunity shields government officials from liability for civil damages for discretionary acts that do not 'violate clearly established statutory or constitutional rights which a reasonable person would have known.'" *Carter v. Huterson*, 831 F.3d 1104, 1108 (8th Cir. 2016) (quoting *Moore ex rel. Moore v. Briggs*, 381 F.3d 771, 772 (8th Cir. 2004)). The defense of qualified immunity involves an inquiry into: (1) whether the plaintiff has alleged facts that make out a violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). At the motion to dismiss stage, a defendant must show that immunity is established "on the face of the complaint." *Dollar Loan Ctr. of S. Dakota, LLC v. Afdahl*, 933 F.3d 1019, 1024 (8th Cir. 2019) (citation omitted). "This requires us to analyze whether [the plaintiff] has stated a plausible claim for a violation of a constitutional or statutory right of which a reasonable person would have known and whether the right was clearly established at the time of the alleged infraction." *Id.* (cleaned up and citations omitted).

"To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Church v. Anderson*, 898 F.3d 830, 832 (8th Cir. 2018) (citation omitted). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the

7

20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The question requires careful consideration of the facts and circumstances of each particular case, including: (1) the severity of the crime, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *See id.* Further, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–397.

"Before employing deadly force, an officer should give some warning when it is feasible to do so." *Loch v. City of Litchfield*, 689 F.3d 961, 967 (8th Cir. 2012). The failure to give a warning where feasible may "add[] to the unreasonableness" of an officer's actions. *Ngo v. Storlie*, 495 F.3d 597, 603 (8th Cir. 2007).

At the motion to dismiss stage, Morgan-Tyra has pleaded sufficient facts to infer that Nikolov's use of force was objectively unreasonable. Morgan-Tyra alleges that Nikolov entered the premises and approached her from behind without announcing his presence or identifying himself as a police officer. Though it is unclear what, if any, commands were given by Nikolov, Morgan-Tyra alleges that Nikolov did not announce his authority or give her reasonable time to comply before firing nine shots into her body. Nikolov asserts that, based on Morgan-Tyra's own allegation that she was pointing a gun at Nicholson at the time of the shooting, a reasonable officer in Nikolov's position could have believed that Morgan-Tyra was the intruder and posed an imminent threat of serious harm to Nicholson. But it is not clear from the complaint whether Nikolov saw or could

8

have seen, given his position, Morgan-Tyra holding the gun, or Nicholson's position in relation to that gun. Nor is it clear whether Nikolov gave any warning before shooting or whether it was feasible to do so. Accepting Morgan-Tyra's allegations as true, the facts alleged are therefore sufficient at this stage to state an excessive force claim. *See Wilson v. Lamp*, 901 F.3d 981, 989 (8th Cir. 2018) ("Force may be objectively unreasonable when a plaintiff does not resist, lacks an opportunity to comply with requests before force is exercised, or does not pose an immediate safety threat.").

As to qualified immunity, at the time of shooting here, a reasonable officer in Nikolov's position would have known that shooting an individual who did not pose an imminent threat to the officer or anyone else, particularly without first warning or identifying himself, violated a clearly established constitutional right. *See, e.g.*, *Campbell v. Johannes*, No. 18-3129, 2019 WL 4696126, at *2 (8th Cir. Sept. 26, 2019) (per curiam) ("[W]e conclude that, in December 2011, when the incident occurred, it was clearly established that Plaintiffs could not be apprehended by deadly force unless they posed a threat of serious physical harm."); *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1212 (8th Cir. 2013) ("On August 31, 2007, Sanders had 'fair warning' [for qualified immunity purposes] that charging at a non-resisting individual without first identifying himself as a police officer was unconstitutional in the context of an arrest.").

Because Morgan-Tyra has stated a plausible claim for a violation of a constitutional right of which a reasonable person would have known, and that right was clearly established at the time of the alleged infraction, Nikolov's immunity is not evident

9

on the face of the complaint. The Court will therefore deny Nikolov's motion to dismiss Count I based on qualified immunity.

**Substantive Due Process Claim Against Nikolov Under § 1983 (Count II)**

Nikolov's only challenge to Morgan-Tyra's substantive due process claim in Count II is that it is foreclosed by *Albright*, 510 U.S. at 271, which held that the Fourth Amendment, and not substantive due process, governs a claim regarding the right to be free of prosecution without probable cause. But as Morgan-Tyra correctly notes in her response brief, her claim in Count II is not limited to an allegation that she was prosecuted without probable cause. Rather, she also claims that Nikolov and other officers manufactured false evidence against her. Such an allegation is sufficient to state a substantive due process claim. *See, e.g.*, *Moran v. Clarke*, 296 F.3d 638, 647 (8th Cir. 2002) ("Unlike the facts of *Albright,* Moran, in his due process claim, offers evidence of a purposeful police conspiracy to manufacture, and the manufacture of, false evidence."); *Livers v. Schenck*, 700 F.3d 340, 354 (8th Cir. 2012) ("It was clearly established by 2006 that the Fourteenth Amendment's guarantee of due process is violated by the manufacture of false evidence in order to falsely formulate a pretense of probable cause.") (cleaned up and citations omitted). The Court will deny Nikolov's motion to dismiss Morgan-Tyra's substantive due process claim.

**Municipal Liability Against the City Under § 1983 (Counts IV and II)**

For § 1983 liability to attach to the City, Morgan-Tyra must show that a constitutional violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075,

1079 (8th Cir. 2018). To establish liability based on an "unofficial" policy or a "custom," a plaintiff must plead facts sufficient to plausibly infer "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the municipality's employees; (2) deliberate indifference to or tacit authorization of such conduct by the municipality's policymaking officials after notice to the officials of that misconduct; and (3) that [the plaintiff] was injured by acts pursuant to the municipality's custom, i.e., that the custom was a moving force behind the constitutional violation." *Meier v. St. Louis, Missouri, City of*, 934 F.3d 824, 828 (8th Cir. 2019) (cleaned up and citations omitted). To establish liability for failure to train or supervise, a plaintiff must plead facts sufficient to plausibly infer 1) the City's police officer training and supervision practices were inadequate, 2) the City was deliberately indifferent to the rights of others in adopting these practices, and 3) the City's training and supervision deficiencies caused Plaintiffs' constitutional deprivation. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (citation omitted).

 I. Excessive Force

Although it is a close question, at this stage, the Court concludes that Morgan-Tyra has plausibly alleged municipal liability with respect to her excessive force claim, based upon the City's unofficial policies or customs. Specifically, Morgan-Tyra alleges a pattern of prior incidents of excessive force, including lethal force involving officers' use of firearms, based on publicly available Internal Affairs Division data showing that hundreds of complaints of excessive force were brought against officers between 2006 and 2014. Morgan-Tyra further alleges that the same data reflects that charges against

11

officers were sustained in only approximately 6% of these cases, and that many additional instances of excessive force were known to the City's police department, such that these statistics significantly understate the extent and scope of the constitutional violations. ECF No. 37 ¶¶ 48-49.

Of course, "the mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging excessive force." *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999). But "[e]vidence a police department has failed to investigate previous incidents similar to the incident in question may support a finding that a municipal custom exists, and that such a custom encourages or allows officers to use excessive force without concern for punishment." *Id.* (reviewing the adequacy of such evidence at the summary judgment stage).

It is questionable whether Morgan-Tyra will ultimately meet such a burden in this case because her complaint does not describe in much detail the factual circumstances of the incidents giving rise to the prior excessive force complaints here, or the investigations relating thereto. However, rather than dismissing the claim at this early stage, the Court believes the better practice is to allow the parties to develop the record with respect to these issues. *See, e.g.*, *Simpson v. Ferry*, 202 F. Supp. 3d 444, 453 (E.D. Pa. 2016) (allowing a municipal liability claim alleging a custom of excessive force to go forward based on similar allegations, viewed in the light most favorable to the plaintiffs); *cf. Odom v. D.C.*, 248 F. Supp. 3d 260, 268 (D.D.C. 2017) (dismissing a municipal liability claim where the plaintiffs "ha[d] not alleged any additional incidents or facts that could comprise a pattern or custom," and noting specifically that the plaintiffs had "not named

12

other complainants in excessive force cases, or cited any statistics or reports on excessive force lawsuits brought against [the police department or city]"). Therefore, the Court will deny City's motion to dismiss Morgan-Tyra's *Monell* claim based on a custom of excessive force.

Nevertheless, the Court will grant the City's motion to dismiss this claim to the extent it is based on a theory of failure to train or supervise. Morgan-Tyra has pled no factual, non-conclusory allegations regarding the nature of the relevant training and supervision practices here, why they were inadequate, or how the City was deliberately indifferent in adopting them. Morgan-Tyra's allegation that "Officer Nikolov himself reported that he did what he was 'trained to do'" (ECF No. 37 ¶ 47), alone, is insufficient to state a failure-to-train claim.

II. <u>Unreasonable Seizure, False Arrest & Violation of Substantive Due Process</u>

The Court will also grant the City's motion to dismiss Morgan-Tyra's unreasonable seizure, false arrest, and violation of substantive due process claim (Count II) against it. Morgan-Tyra's allegations in Count II focus on a single false arrest—her own. Although she alleges that the City "had a longstanding and widespread custom of usage of arresting victims of excessive use of force and other police misconduct and instigating criminal charges, without probable cause or legal justification" (ECF No. 37 ¶ 37), she alleges no facts in support of this conclusion and has not identified any other instance of false arrest other than her own.

Likewise, although she alleges that the City's Chief of Police is the final law-enforcement policymaker for the City and must have approved her arrest, she does not

13

allege any facts to plausibly demonstrate that the Chief knew that Nikolov or any other officer falsified evidence to support that arrest. Therefore, Morgan-Tyra has not pled factual allegations sufficient to plausibly support the existence of an unconstitutional policy or custom that caused the constitutional violations alleged in Count II. Nor has she sufficiently pled *Monell* liability for this claim on a failure-to-train theory, for the same reasons stated above.

### Civil Conspiracy Claim Under § 1985 (Count III)

To prove a 42 U.S.C. § 1985(3) conspiracy claim,[2] a plaintiff must show "(1) the existence of a conspiracy; (2) that the purpose of the conspiracy was to deprive him of his civil rights; (3) an act in furtherance of the conspiracy; and (4) injury." *McDonald v. City of Saint Paul*, 679 F.3d 698, 706 (8th Cir. 2012). The plaintiff must "allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Kelly*, 813 F.3d at 1077 (citations omitted). This requires factual support to suggest a meeting of the minds between the defendants, directed towards conducting unconstitutional action. *Id.* at 1078 (citation omitted). However, "[e]vidence of an agreement to deprive a plaintiff of constitutionally guaranteed rights typically is circumstantial." *Livers v. Schenck*, 700 F.3d 340, 361 (8th Cir. 2012).

---

[2] Plaintiffs' second amended complaint does not specify the sub-section of § 1985 under which Morgan-Tyra asserts her claim. However, based on the allegations that the conspiracy was intended to deprive Morgan-Tyra of her constitutionally guaranteed rights, the Court has inferred that the applicable section is § 1985(3), regarding the deprivation of persons' rights or privileges. The other sub-sections concern (1) preventing officers from performing duties, and section (2) obstructing justice, or intimidating a party, witness, or juror. 42 U.S.C. §§ 1985(1)-(2).

Morgan-Tyra has plausibly alleged a § 1985(3) conspiracy claim. Specifically, Morgan-Tyra alleges an agreement between Nikolov and Buschart to provide false evidence, including falsely stating that they had identified themselves as police officers prior to the shooting, as part of a scheme to cover up Nikolov's use of excessive force and to justify Morgan-Tyra's unlawful arrest.

The City argues that the civil conspiracy claim should be dismissed as barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine provides that "a local government entity cannot conspire with itself through its agents acting within the scope of their employment." *Kelly*, 813 F.3d at 1078 (quoting *L.L. Nelson Enters., Inc. v. County of St. Louis, Mo.*, 673 F.3d 799, 812 (8th Cir. 2012)).

The Eighth Circuit has not addressed whether the doctrine applies to conspiracies involving underlying claims of excessive force or unreasonable seizure under § 1983, and the judges of this District have declined to apply the intracorporate conspiracy doctrine to such claims, at least at the pleading stage. *See, e.g.*, *Newbold v. City of Saint Louis, Missouri*, No. 4:18CV1572 HEA, 2019 WL 3220405, at *6 (E.D. Mo. July 16, 2019) (collecting cases); *see also Golden v. Moutray*, No. 4:17 CV 284 DDN, 2018 WL 1784395, at *4 (E.D. Mo. Apr. 13, 2018) ("Some courts have held that the intracorporate conspiracy doctrine does not protect conspiracies to commit excessive force under Section 1983[,] . . . reason[ing] that the intracorporate conspiracy doctrine was created to shield corporations and their employees from conspiracy liability for routine, collaborative business decisions that are later alleged to be discriminatory, and police misconduct does not fit that mold . . . .") (cleaned up and citations omitted). Here, too,

15

the Court finds that it is inappropriate to apply the intracorporate conspiracy doctrine at this stage. Therefore, the Court will deny Defendants' motion to dismiss Count III.

**State Law Claims (Counts V-X)**

I. Official Immunity

"Under Missouri law, the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions, but not from liability in claims arising from their performance of ministerial acts." *Reasonover v. St. Louis Cty.*, Mo., 447 F.3d 569, 585 (8th Cir. 2006) (citation omitted). "[A] police officer's decision to use force in the performance of his duties is discretionary rather than ministerial." *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015) (citation omitted). The same is true for the investigation of a crime and arrest. *See Reasonover,* 447 F.3d at 585.

But "official immunity does not apply to discretionary acts done in bad faith or with malice." *Id.* "Acting with malice requires an actual intent to cause injury." *Wealot v. Brooks*, 865 F.3d 1119, 1129 (8th Cir. 2017) (citation omitted). "A finding of bad faith embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive." *Id.* (citations omitted).

At this early stage, Morgan-Tyra's allegations regarding Nikolov's use of excessive force and fabrication of evidence in support of a false arrest, are sufficient to overcome Nikolov's claim of official immunity. Morgan-Tyra alleges that Nikolov shot her at least nine times without identifying himself as a police officer or giving her reasonable time to comply with demands, and that Nikolov was not in fear for his safety

16

or that of others. She further alleges that Nikolov provided false information in police reports to cover up his actions. The other Plaintiff, Morgan, likewise alleges that Nikolov intentionally or recklessly fired his weapon in Morgan's direction, and unnecessarily used lethal force against his sister, causing him severe emotional distress. Such factual allegations are sufficient at this stage to infer that Nikolov acted in bad faith or with malice. The Court will deny Nikolov's motion based on official immunity.

II.     Sovereign Immunity

"[I]n the absence of an express statutory exception to sovereign immunity, or a recognized common law exception such as the proprietary function and consent exceptions, sovereign immunity is the rule and applies to all suits against public entities[.]" *Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors,* 476 S.W.3d 913, 921-22 (Mo. 2016). Missouri law provides statutory exceptions to sovereign immunity, including, as relevant here, when a political subdivision purchases liability insurance to cover certain tort claims, in the amount of and for the purposes covered by the insurance purchased. Mo. Rev. Stat. § 537.610.1; *see also Hammer v. City of Osage Beach*, 318 F.3d 832, 841 (8th Cir. 2003). "[A] plaintiff must specifically plead facts demonstrating that the claim is within this exception to sovereign immunity" by pleading the existence of insurance and that the insurance covers the plaintiff's claim. *Epps v. City of Pine Lawn*, 353 F.3d 588, 594 (8th Cir. 2003).

With regards to each state-law claim, Plaintiffs have pleaded that the City has waived sovereign immunity through its purchase of liability insurance, in accordance with the exception under § 537.610. Plaintiffs allege that the City has purchased

17

insurance through the PFPC, a not for profit corporation into which the City pays funds annually; that the funds are later disbursed by the corporation to pay claims against the City; and that, alternatively, the City's relationship with the PFPC serves as a self-insurance plan because, as described in the 2017 Comprehensive Annual Financial Report for the City of St. Louis, "its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters." *E.g.*, ECF No. 37 ¶¶ 89-90.

The undersigned agrees with the other judges in this District who have held that similar allegations of PFPC insurance or self-insurance are sufficient at this stage to plead an exception to sovereign immunity under § 537.610.1. *See, e.g., Aldridge v. City of St. Louis, Missouri*, No. 4:18-CV-1677 CAS, 2019 WL 1695982, at *13 (E.D. Mo. Apr. 17, 2019); *Fortenberry v. City of St. Louis*, No. 4:18-CV-01937-JCH, 2019 WL 1242671, at *7 (E.D. Mo. Mar. 18, 2019). The Court will deny the City's motion to dismiss the state-law claims on the basis of sovereign immunity.

### III. Negligent Infliction of Emotional Distress

The Court will also deny Defendants' motion to dismiss Plaintiffs' negligent infliction of emotional distress claims. As to Morgan-Tyra's claim (Count VIII), although the facts alleged could give rise to an intentional infliction of emotional distress claim, they do not preclude a finding of negligent infliction of emotional distress. *See, e.g., State ex rel. Halsey v. Phillips*, 576 S.W.3d 177, 182 n.6 (Mo. 2019) (rejecting an argument that a negligent infliction of emotional distress claim was subject to dismissal because the plaintiff "failed to allege conduct that was negligent rather than intentional or

reckless," where the allegations were sufficient to permit a jury to find "*either* that [the defendant] engaged in conduct to intentionally or recklessly cause her severe emotional distress *or* that [the defendant] should have realized his conduct involved an unreasonable risk of causing her severe emotional distress") (emphasis added). As to Morgan's claim (Count X), it is pled as an alternative to an intentional infliction of emotional distress theory, and such alternative pleading is expressly permitted by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(d).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint is **GRANTED in part and DENIED in part**, as set forth above. ECF No. 39. The motion is **GRANTED** only as Count II's claim against the City of St. Louis (Count II survives as against Officer Andrei Nikolov); and the failure-to-train-or-supervise claim in Count IV (the remainder of Count IV survives). The motion is otherwise **DENIED**.

**IT IS FURTHER ORDERED** that, no later than **30 days** from the date of this Order, the parties shall file a proposed amended schedule for ADR and, if appropriate, any other remaining deadlines in the Case Management Order.

*[signature]*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of October, 2019.