**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER MORGAN-TYRA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18-cv-01799-MTS |
| | ) | |
| CITY OF ST. LOUIS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Before the Court is Defendant City of St. Louis and Defendant Officer Andrei Nikolov's

Motion for Summary Judgment, Doc. [192], in which they seek summary judgment in their favor

on all Plaintiff Jennifer Morgan-Tyra's and Plaintiff Michael Morgan's claims in the Second

Amended Complaint, Doc. [37].  The parties extensively briefed the Motion, and it is now ripe

for adjudication.  For the reasons explained below, the Court has concluded that, when viewing

the record in the light most favorable to Plaintiffs and drawing all reasonable inferences in their

favor, Defendants are entitled to judgment as a matter of law on Plaintiff Morgan-Tyra's claims

arising under federal law.  Because only Plaintiffs' claims under Missouri state law remain, the

Court, in its discretion, declines to exercise supplemental jurisdiction over these remaining

claims.  Accordingly, the Court will grant Defendants' Motion in part and enter summary

judgment in favor of Defendants on Plaintiff Morgan-Tyra's claims arising under federal law,

and the Court will deny the Motion without prejudice in all other respects and dismiss Plaintiffs'

claims arising under Missouri state law without prejudice.

## I.      Background

On May 8, 2015, Plaintiff Jennifer Morgan-Tyra was pointing a gun toward a woman in the home of Morgan-Tyra's brother, Plaintiff Michael Morgan, when Defendant Andrei Nikolov, a uniformed, on-duty police officer with the St. Louis Metropolitan Police Department who was responding to a 911 call, shot Morgan-Tyra multiple times.   Plaintiff Morgan witnessed his sister, Plaintiff Morgan-Tyra, being shot by Defendant Nikolov.   Though numerous bullets struck Plaintiff Morgan-Tyra, she survived.   But she now lives with significant irreversible effects from her extensive injuries.   After the incident at issue here, a grand jury indicted Plaintiff Morgan-Tyra with two felonies—assault of a law enforcement officer in the second degree and armed criminal action—based on her alleged conduct that led to Defendant Nikolov shooting her.   In June of 2017, the St. Louis Circuit Attorney's Office dropped the charges against Plaintiff Morgan-Tyra.   Thereafter, Plaintiff Morgan-Tyra and her brother, Plaintiff Morgan, filed the instant action.

Plaintiffs' Second Amended Complaint, the operative complaint here, contains a total of ten counts, with some arising under federal law and some arising under Missouri state law. Plaintiff Morgan-Tyra brought eight total counts, one against Defendant Nikolov alone, one against the City alone, and six against both Defendant Nikolov and the City.   Plaintiff Morgan brought two claims, both of which are against Defendant Nikolov and the City.   Morgan-Tyra asserts a 42 U.S.C. § 1983 excessive force claim against Defendant Nikolov in his individual capacity (Count One), a § 1983 "unreasonable seizure, false arrest and violation of substantive due process" claim against both Defendants[1] (Count Two), a § 1985[2] conspiracy claim against

---

[1] The Court previously granted Defendants' Motion to Dismiss Count Two against the City.   Count Two now is against only Defendant Nikolov.   Doc. [53] at 19; *Morgan-Tyra v. City of St. Louis*, 4:18-cv-01799-AGF, 2019 WL 5597094, at *8 (E.D. Mo. Oct. 30, 2019).

both Defendants (Count Three), a § 1983 failure to train, supervise, or discipline[3] claim against

the City (Count Four), and claims under Missouri state law for false imprisonment, malicious

prosecution, abuse of process, and negligent infliction of emotional distress against both

Defendants (Counts Five through Eight, respectively).  Plaintiff Morgan brings his claims, Count

Nine and Count Ten, in the alternative and alleges both counts against both Defendants.  Count

Nine alleges a claim under Missouri law for intentional infliction of emotional distress, and

Count Ten alleges a claim under Missouri law for negligent infliction of emotional distress.

Defendants now seek summary judgment on all the claims against them, primarily

relying on the doctrine of qualified immunity for the claims arising under federal law and on the

doctrine of official immunity for the claims arising under Missouri law.  *See Williams v. Jackson*,

600 F.3d 1007, 1012 (8th Cir. 2010) (explaining qualified immunity); *Southers v. City of

Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008) (explaining official immunity under

Missouri law).

## II.     Standard

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment to a

moving party "if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  At the summary

judgment stage, facts must be viewed in the light most favorable to the nonmoving party, but

only if there is a "genuine" dispute as to those facts.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Mere "metaphysical doubt as to the material facts" is insufficient to defeat summary judgment.

---

[2] At the Motion to Dismiss stage, this Court noted that the Second Amended Complaint did not specify the subsection of § 1985 under which Plaintiff Morgan-Tyra asserted her claim, and the Court noted it inferred that the applicable subsection is § 1985(3).  Doc. [53] at 14 n.2; *Morgan-Tyra*, 2019 WL 5597094, at *6.

[3] The Court previously granted Defendants' Motion to Dismiss Count Four "to the extent it [wa]s based on a theory of failure to train or supervise."  Doc. [53] at 13; *Morgan-Tyra*, 2019 WL 5597094, at *5.  Count Four's theory of municipal liability based on a custom of excessive force survives.  *Id.*

*Id.*  A party asserting that a fact is genuinely disputed must support the assertion by citing to particular parts of materials in the record.  Fed. R. Civ. P. 56(c).  A district court, however, is not "constrained to view only the evidence submitted by [the moving party] to support its summary judgment motion; the court c[an] consider any evidence in the record."  *Terra Indus., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 383 F.3d 754, 759 (8th Cir. 2004); *accord* Fed. R. Civ. P. 56(c)(3) (providing court "may consider other materials in the record" besides just "cited materials").  In reviewing the record, a court must not weigh evidence at the summary judgment stage but instead should decide simply whether there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Scott*, 550 U.S. at 380.  The Court will specifically identify the Plaintiffs-friendly version of the genuinely disputed facts.  *See N.S. v. Kansas City Bd. of Police Comm'rs.*, 933 F.3d 967, 970 (8th Cir. 2019).

III.    **Facts**

On the evening of May 8, 2015, Defendant Nikolov and his partner, Officer Gregory Bushart, were on-duty, and in full uniform, as police officers with the St. Louis Metropolitan Police Department when, at around 6:49 p.m., they received a radio assignment for a disturbance at 4241 Chippewa Street in St. Louis.  The dispatcher advised the officers that a 911 caller, Karla Nicholson, was having a dispute with her other roommate who possibly had a gun and who had threatened Nicholson.  The dispatcher further advised that Nicholson was locked in her bedroom.  Defendant Nikolov's in-car computer also received the corresponding electronic call notes relaying the same information.  Defendant Nikolov and Officer Bushart responded to 4241 Chippewa.    At  7:02:55 p.m.,  Defendant  Nikolov's  patrol  car  automatically  notified  the

Computer-Aided Dispatch System that his patrol car came within seventy-five meters (about eighty-two yards) of 4241 Chippewa.  At 7:03:31 p.m., a dispatch began over the same dispatch channel, albeit directed to a different officer, this time advising that a 911 caller named Jennifer at 4241 Chippewa reported that a white female armed with a screwdriver was trying to attack the caller.  The dispatcher reported that Jennifer was "armed with a gun" and "threatened to shoot . . . if the female came close to her."[4]  Doc. [63-4].  A corresponding electronic call note reporting this dispatch was *not* sent to Defendant Nikolov's in-car computer.  Whether Defendant Nikolov had entered the residence at 4241 Chippewa prior to this second dispatch is disputed.

When Defendant Nikolov and Officer Bushart arrived at 4241 Chippewa, the front door of the residence was open, and there was an unlocked metal screen door closed in front of it.  Officer Bushart banged on the closed metal screen door and both officers yelled "police."[5]  The officers then entered the residence.  Though unbeknownst to Defendant Nikolov and Officer Bushart at that moment, there were four individuals inside that residence at the time they arrived, Plaintiff Morgan-Tyra, Plaintiff Morgan, Nicholson, and Richard Peterson.  The officers first encountered a man in a tank top, Peterson.  Peterson told the officers something to the effect of, "I tried to calm the situation down; they are in the back."  Doc. [211] ¶ 22.  In the home, the

---

[4] Defendant Nikolov maintains that he did not hear this dispatch, but for purposes of this Motion the Court will assume that he did hear it.  *See Craighead v. Lee*, 399 F.3d 954, 961 (8th Cir. 2005) (noting that, although officer denied hearing a dispatch, the facts, taken in the light most favorable to plaintiff, showed that the officer either was still in his car or had his pack set on when the dispatcher broadcast the news that a gun had changed hands).

[5] Plaintiffs purport to deny this fact.  But they do not point to any evidence that genuinely puts this fact into dispute. They begin their dispute noting that in surveillance video "you cannot 'see' the Officers 'physically' yelling as if they did so loudly."  Doc. [211] ¶ 16.  But this video, which lacks audio, in no way establishes that they did not yell police.  The remainder of their dispute is premised on other individuals at varying distances testifying that they did not hear the police yell.  *Id.*  The fact that they did not hear them "fails to contradict the officer's positive testimony" because testimony that they did not hear them "fails to present a question of material fact as to whether" police announced themselves.  *Malone v. Hinman*, 847 F.3d 949, 955 n.3 (8th Cir. 2017); *see also* Doc. [211] ¶ 16 (Plaintiffs noting that Richard Peterson, who was in the residence at the time, testified that police "might have" loudly announced their presence before entering and Peterson further testified that the police "were loud enough for [him] to hear" but that they were "almost being drowned out by" Plaintiff Morgan's shouting).

Officers could hear screaming and swearing.[6]  Defendant Nikolov walked toward the screaming. As he did, Defendant Nikolov saw another man, Plaintiff Morgan, who was standing between Defendant Nikolov and Plaintiff Morgan-Tyra.  Plaintiff Morgan-Tyra was holding a gun and pointing it toward Nicholson.  Plaintiff Morgan was yelling at Plaintiff Morgan-Tyra to put the gun down.  But Plaintiff Morgan-Tyra continued to point the gun "directly" at Nicholson[7] and yell at her.  Defendant Nikolov also yelled at Plaintiff Morgan-Tyra to put the gun down.[8] Though it is undisputed that Defendant Nikolov at least yelled at Plaintiff Morgan-Tyra to put the gun down, it is disputed whether Defendant Nikolov again identified himself as a police officer, like he did prior to entering the residence.  Defendant Nikolov fired his service weapon at Plaintiff Morgan-Tyra almost immediately[9] after giving his command for her to drop her weapon.

Multiple bullets struck Plaintiff Morgan-Tyra, and she sustained critical injuries.  She spent significant time in the hospital and underwent numerous surgeries.  She has lasting effects from her injuries, including paralysis.  The day after the shooting the St. Louis Circuit Attorney's

---

[6] Officers testified that even while outside they could hear screaming from inside.  Plaintiffs dispute that the officers would be able to hear screaming coming from the inside, but Plaintiffs do not provide any evidence that Defendant did not hear the screaming or that Defendant would have been unable to hear it.

[7] Doc. [93-5] at 35 (134:12–18) (Q: "So in the seconds leading up to being shot, you had the gun in your right hand?"  A: "Yes."  Q: "And it was still pointed directly at Miss Nicholson, correct?"  A: "Yes."); Doc. [93-13] at 16 (58:25–59:13) (Defendant Nikolov testifying that Plaintiff Morgan-Tyra had her gun pointed "kind of at an angle" and then raised the gun, at which point Defendant shot her).

[8] Doc. [37] ¶ 12 (Plaintiffs alleging that Defendant Nikolov failed to give Plaintiff Morgan-Tyra "a reasonable opportunity to follow his commands"); Doc. [194-1] ¶ 5 (affidavit of Plaintiff Morgan-Tyra in which she states that Defendant Nikolov can be heard saying on the 911 recording "put the gun down" and "drop the gun"); Doc. [211] ¶ 36 (Plaintiff Morgan testifying that police yelled "drop it" at Plaintiff Morgan-Tyra); id. ¶ 50 (Plaintiff Morgan stating Defendant Nikolov "screamed at [Plaintiff Morgan-Tyra] to put the gun down").  As previously noted, the mere fact that Plaintiff Morgan-Tyra claims she did not hear an order given in this loud and frantic environment does not create a genuine dispute of fact as to whether Defendant Nikolov gave the order.  *See Malone*, 847 F.3d at 955 n.3.

[9] The parties dispute the amount of time that passed between when Defendant Nikolov ordered Plaintiff Morgan-Tyra to drop the gun and when he began shooting Plaintiff Morgan-Tyra.  But the parties do not dispute that Plaintiff Morgan, who was standing in between Plaintiff Morgan-Tyra and Defendant Nikolov, dropped to the ground before Defendant Nikolov shot Plaintiff Morgan-Tyra.  Doc. [211] ¶ 37.  Viewing the facts in Plaintiffs' favor, the Court assumes for purposes of Defendants' Motion that Defendant Nikolov opened fire almost immediately after ordering Plaintiff Morgan-Tyra to put her gun down.

Office filed a two-count felony complaint against Plaintiff Morgan-Tyra charging her with assault of a law enforcement officer in the second degree and armed criminal action.  Doc. [102-9].  Days later, a grand jury indicted Plaintiff Morgan-Tyra on those two charges.  Doc. [102-10].  Plaintiff turned herself in, was photographed, and fingerprinted.  Two years later, the Circuit Attorney's Office entered a memorandum of *nolle prosequi*, which ended the prosecution.

## IV.   Discussion

### a. Count One

Plaintiff Morgan-Tyra alleges in Count One that Defendant Nikolov used excessive force against her in violation of the Fourth Amendment.  Defendant Nikolov argues that his use of force was objectively reasonable because he had probable cause to believe Plaintiff Morgan-Tyra posed a threat of serious physical harm.  He further argues that qualified immunity shields him from liability.

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."  U.S. Const. amend. IV.  This right protects individuals from "being seized through excessive force by law enforcement officers."  *Thompson v. Monticello*, 894 F.3d 993, 998 (8th Cir. 2018) (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1202 (8th Cir. 1999)).  To determine whether a violation of the Fourth Amendment premised on excessive force has occurred, courts look to "whether the amount of force used was objectively reasonable under the particular circumstances."  *Coker v. Ark. State Police*, 734 F.3d 838, 842 (8th Cir. 2013); *accord Franklin for Est. of Franklin v. Peterson*, 878 F.3d 631, 635 (8th Cir. 2017) ("As to the excessive force claim, the Fourth Amendment requires us to ask, from the perspective of a reasonable officer on the scene, 'whether the officers' actions are "objectively reasonable" in light of the facts and circumstances

confronting them, without regard to their underlying intent or motivation.'" (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989))).

The test of reasonableness under the Fourth Amendment "is not capable of precise definition or mechanical application," but a "proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. That said, the reasonableness of a particular use of force cannot be judged "with the 20/20 vision of hindsight." *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97; *accord Johnson v. Carroll*, 658 F.3d 819, 826 (8th Cir. 2011).

The situation Defendant Nikolov faced here was the epitome of a tense and uncertain one with rapidly evolving circumstances. Defendant Nikolov received a 911 dispatch report that a woman was having a dispute with her a roommate who possibly was armed.[10] Upon arriving at the scene, Defendant Nikolov encountered a man who told him he had tried to calm the situation down to no avail. Moments later, Defendant Nikolov saw Plaintiff Morgan-Tyra yelling and pointing a gun at a woman while another man yelled at Plaintiff Morgan-Tyra to drop her gun. Defendant Nikolov told Plaintiff to drop the weapon,[11] and there is no dispute that she did not.

---

[10] The Court acknowledges Plaintiff's argument that there were conflicting dispatches because a second dispatch went out over the same channel, after the dispatch to which Defendant Nikolov was responding, that said that Plaintiff Morgan-Tyra was armed with a gun and had threatened to shoot a woman that was trying to attack Plaintiff with a screwdriver. Notwithstanding the fact that Defendant Nikolov denies hearing this dispatch, the Court need not address this issue because it finds Defendant Nikolov is entitled to qualified immunity even if he violated the Fourth Amendment.

[11] While it is undisputed that Defendant Nikolov announced "police" when he entered the home and later ordered Plaintiff Morgan-Tyra to drop her weapon, the Court stops short of determining the sufficiency of this warning, given the lack of undisputed facts in the record regarding the time between Defendant Nikolov's warning and the

Morgan-Tyra, by all appearance, seemed to pose an immediate threat to the safety of others. Indeed, Plaintiff Morgan-Tyra acknowledges that she was intending to intimidate Nicholson and make Nicholson believe that Plaintiff Morgan-Tyra would shoot Nicholson if she did not do as Plaintiff said. Doc. [211] ¶ 29. When an officer "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable" to use "deadly force." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *see also Cole Est. of Richards v. Hutchins*, 959 F.3d 1127, 1133 (8th Cir. 2020) (explaining an officer has probable cause to believe a plaintiff "posed an immediate threat of serious physical harm" where a plaintiff is "pointing the weapon at a" person or "wielding it in an otherwise menacing fashion"). In any event, the Court concludes it need not decide whether Defendant Nikolov violated Plaintiff's Fourth Amendment rights because Defendant Nikolov is entitled to qualified immunity even *if* he did.

An officer is entitled to qualified immunity unless the evidence establishes (1) a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation such that a reasonable person would have known that his actions were unlawful. *Blazek v. Iowa City*, 761 F.3d 920, 922–23 (8th Cir. 2014). If possible, the Court may resolve the case under either prong of the analysis. *See id.* at 923; *Pearson v. Callahan*, 555 U.S. 223,

---

use of his firearm. *See, e.g., Est. of Morgan v. Cook*, 686 F.3d 494, 498 (8th Cir. 2012) (finding no Fourth Amendment violation where officer "did not merely stand silent before shooting" and ordered the individual "to drop the knife" anywhere from two to fifteen times); *Cole Est. of Richards v. Hutchins*, 959 F.3d 1127, 1133 (8th Cir. 2020) (finding use of deadly force was not objectively reasonable where officer failed to give warning during the span of five to ten seconds); *Loch v. City of Litchfield*, 689 F.3d 961, 967 (8th Cir. 2012) (finding no Fourth Amendment violation where officer did not give warning but had drawn his firearm, pointed it at plaintiff, and, before the officer fired, repeatedly ordered plaintiff to get on the ground, which put plaintiff on notice that "escalation of the situation would result in the use of the firearm"). That said, determining whether the warning was sufficient would be necessary only *if* the Court concluded that giving some warning was "feasible" in this situation. *See Loch*, 689 F.3d at 967 (explaining the Supreme Court has held that "[b]efore employing deadly force, an officer should give 'some warning' when it is 'feasible' to do so" (citing *Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985))). And, in any event, "the failure to warn when feasible does not 'automatically' render use of deadly force unreasonable." *Cole*, 959 F.3d at 1133 (quoting *Ludwig v. Anderson*, 54 F.3d 465, 474 (8th Cir. 1995)). All that said, the Court similarly declines to determine this issue given the Court's determination that Defendant Nikolov is entitled to qualified immunity even if he used excessive force and violated the Fourth Amendment.

242 (2009) ("[T]he judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case."). The Court has determined that even *if* Defendant Nikolov's use of force was excessive and thus violated the Fourth Amendment, it was not clearly established that Defendant Nikolov's use of force was excessive here.

The doctrine of qualified immunity shields officials from civil liability when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (internal quotations omitted). A right is "clearly established" when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 577 U.S. at 11 (internal quotations omitted). Though there need not be "a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 137 S. Ct. at 551 (internal quotations omitted). It is not enough that a rule merely is "suggested by then-existing precedent." *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018). Rather, the "precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

The "clearly established" standard requires that the legal principle clearly prohibit the official's conduct "in the particular circumstances before him." *Id.* Thus, the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (internal quotations omitted). The Supreme Court repeatedly has told courts "not to define clearly established law at a high level of generality." *See, e.g.*, *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021); *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). That admonition is especially relevant here. The Supreme Court has

said that "specificity" regarding the particular circumstances is "especially important in the Fourth Amendment context," where it is "sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix*, 577 U.S. at 12; *see also White*, 137 S. Ct. at 552 ("*Graham*, *Garner*, and their Court of Appeals progeny . . . lay out excessive-force principles at only a general level.").

In their briefing, Plaintiffs argue that Defendants had the burden of establishing Plaintiff Morgan-Tyra's right was not clearly established at the time of the shooting. *See, e.g.*, Doc. [210-1] at 32. Plaintiffs are incorrect; they had the burden of demonstrating that case law clearly established it. *See Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) ("[T]o show a violation of clearly established law, [respondent] must identify a case that put [the officer] on notice that his specific conduct was unlawful. [Respondent] has not done so."); *Bond*, 142 S. Ct. at 11–12 ("Neither the panel majority [below] nor the respondent has identified a single precedent finding a Fourth Amendment violation under similar circumstances. The officers were thus entitled to qualified immunity."); *D.C.*, 138 S. Ct. at 582 (noting arrestees "failed to identify a single precedent finding a Fourth Amendment violation under similar circumstances"); *McDaniel v. Neal*, 44 F.4th 1085, 1092 (8th Cir. 2022) (noting plaintiff "d[id] not point to a case . . . that clearly established that [defendant's] use of force was excessive"); *Shelton v. Stevens*, 964 F.3d 747, 753 (8th Cir. 2020) ("[T]o defeat [defendant's] defense of qualified immunity, [plaintiff] must demonstrate that his right to be free from this particular use of force was clearly established at the time of the incident."); *Kasiah v. Crowd Sys., Inc.*, 915 F.3d 1179, 1185 (8th Cir. 2019) (finding plaintiff "failed to meet his burden of showing that [defendant] violated a right that was clearly established"); *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011) (noting that a plaintiff alleging excessive use of force "must establish that the constitutional right was clearly

established"); *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) ("Although the defendant bears the burden of proof for [qualified immunity], the plaintiff must demonstrate that the law was clearly established."); *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989) ("The plaintiff must demonstrate that the law is clearly established[.]").

Plaintiff failed to point the Court to any case or set of cases that made it clear that every reasonable official would have known that Defendant Nikolov shooting Plaintiff Morgan-Tyra was unlawful in the tense, uncertain, and rapidly evolving situation into which he walked—a person screaming at someone and pointing a gun at them while a bystander yelled for her to put down her gun after another bystander had told the officer he also failed to calm the situation down. *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) (noting "an officer enjoys qualified immunity and is not liable for excessive force unless he has violated a clearly established right, such that it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted" (internal alterations and quotations omitted)). Nevertheless, the Court undertook its own search, but it found none. *See Kuessner v. Wooten*, 1:17-cv-57-AGF, 2018 WL 6788602, at *6 (E.D. Mo. Dec. 26, 2018) ("Neither [plaintiff] nor the Court has identified a precedent finding a Fourth Amendment violation under similar circumstances."), *aff'd*, 987 F.3d 752 (8th Cir. 2021); *see also Bell v. Neukirch*, 979 F.3d 594, 613 (8th Cir. 2020) (Stras, J., concurring in part and dissenting in part) (noting "neither [the arrestee] nor the court" identified "a single precedent" finding a constitutional violation under similar circumstances).

The only cases that Plaintiffs discuss besides the cases Defendants cited for support of their Motion are *Craighead v. Lee*, 399 F.3d 954 (8th Cir. 2005), and *Cole Estate of Richards v. Hutchins*, 959 F.3d 1127, 1134 (8th Cir. 2020). "Suffice it to say, a reasonable officer could miss the connection between [those] case[s] and this one." *Bond*, 142 S. Ct. at 12. Use of

excessive force is an area of the law "in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. *Kisela*, 138 S. Ct. at 1153. In *Craighead*, the United States Court of Appeals for the Eighth Circuit found an officer violated the Fourth Amendment when the officer shot his shotgun at two men wrestling, and fired without warning, knowing that the shot would hit *both* men, one of whom the officer had to presume was a victim rather than a suspect given the officer's knowledge of the dispute. *Craighead*, 399 F.3d at 961. In *Cole*, the Eighth Circuit found a Fourth Amendment violation because it concluded the officer did not have probable cause to believe the individual that the officer shot posed an immediate threat of serous physical harm to anyone since the individual was *not* pointing his weapon at anyone or "wielding it in an otherwise menacing fashion." 959 F.3d at 1133. These cases do not squarely govern the specific facts at issue here, and the Court has not located any that do. Defendant Nikolov therefore is entitled to qualified immunity on Count One.

b. *Count Two*

In Count Two, Plaintiff Morgan-Tyra alleges a claim for "unreasonable seizure, false arrest and violation of substantive due process cognizable under 42 U.S.C. § 1983" against Defendant Nikolov. Doc. [37] at 9; *see also supra* note 1. This amalgamation of a claim is difficult to parse as it seems even Plaintiff was unsure of which of her rights Defendant Nikolov allegedly infringed. Section 1983 "only provides a remedy for violations of rights expressly secured by federal statutes or the Constitution." *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001). From the parties briefing relevant to Count Two, it appears that Plaintiff is asserting a claim for "malicious prosecution," which is what the parties call the claim in their briefing even though the phrase *malicious prosecution* itself appears nowhere in Count Two or

the paragraphs incorporated by reference into Count Two, Doc. [37] at 1–12.  *See, e.g.*, Doc. [193] at 41, 45; Doc. [210-1] at 41; *see also id.* at 46 (arguing that "Plaintiff's [§] 1983 malicious prosecution claim is supported by the record evidence" (capitalization altered)).  But, like Count Two, the Constitution also "does not mention malicious prosecution."  *Kurtz*, 245 F.3d at 758.  So simply calling a claim one for malicious prosecution, without more, does little to illuminate the claim's constitutional basis.  *Id.* (explaining "malicious prosecution by itself . . . does not allege a constitutional injury" (citing *Gunderson v. Schlueter*, 904 F.2d 407, 409 (8th Cir. 1990))).   Whatever Plaintiff calls her claim, the "first step" is to "identify the specific constitutional right allegedly infringed."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *accord Graham*, 490 U.S. at 394 (explaining the "first inquiry in any § 1983 suit" is to isolate the "precise constitutional violation" with which the defendant is charged).  Even when looking to the substantive allegations in Count Two, it is not easy to identify the specific constitutional right Plaintiff Morgan-Tyra alleges Defendant Nikolov infringed.

In Count Two, Plaintiff alleges that she did not commit any crime and that Defendant Nikolov was aware she had not committed any crime.  Plaintiff further alleges Defendant "subjected Plaintiff to false arrest and an unreasonable seizure of the person[12] in violation of her due process rights protected under the Fourth and Fourteenth Amendments of the Constitution of the United States."  Doc. [37] ¶ 29.  With that, it seems, perhaps, that Count Two is sounding in the Fourth Amendment as incorporated against the states by the Fourteenth Amendment— possibly "a Fourth Amendment claim under § 1983 for malicious prosecution, sometimes

---

[12] Adding to the confusion, a false arrest and an unreasonable seizure of the person can themselves be different claims.  An officer can unreasonably seize an individual in violation of the Fourth Amendment without arresting them.  *Compare* Eighth Circuit Manual of Model Jury Instructions (Civil) § 4.5 (2021) (setting out elements for unreasonable stop, which requires that "Defendant 'seized' Plaintiff"), *with id.* at § 4.51 (setting out elements for false arrest, which requires that "Defendant arrested Plaintiff"); *see also McGovern v. George Washington Univ.*, 245 F. Supp. 3d 167, 184 (D.D.C. 2017) ("The Fourth Amendment protects against all 'seizures,' not only formal arrests."), *aff'd sub nom. McGovern v. Brown*, 891 F.3d 402 (D.C. Cir. 2018).

referred to as a claim for unreasonable seizure pursuant to legal process," for example.  *See Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022).   But Plaintiff doubles down on her "substantive due process" theory, arguing that when Defendant Nikolov allegedly reported the circumstances of the shooting falsely, and thereby instigated a criminal prosecution against Plaintiff on the basis of false evidence, it violated her "substantive due process rights protected under the Fourteenth Amendment[] of the Constitution of the United States."  Doc. [37] ¶ 34.

By pleading these various constitutional buzzwords all together in one Count, and adopting by reference all preceding paragraphs of the Second Amended Complaint, Plaintiff "essentially coughed up an unsightly hairball of factual and legal allegations, stepped to the side, and invited the . . . Court to pick through the mess . . . ."  *See Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011).  If a plaintiff is unable even to articulate what specific right of hers a police officer's conduct violated, the plaintiff surely has failed to show that the unarticulated right was clearly established, that is, that every reasonable officer would have understood that what he was doing violated a particular right.  *Cf. Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1108 (8th Cir. 2004) (observing that police officers are not expected to analyze the law "as though they were participating in a law school seminar").  By that proposition, Defendant Nikolov would be entitled to qualified immunity on the claim(s) in Count Two.  But the Court will do its best to pick through the substance of Plaintiff Morgan-Tyra's claims(s) in Count Two specifically to determine whether Defendant Nikolov is entitled to qualified immunity on them.

The Court concludes that Count Two fails in as much as it claims Defendant Nikolov violated Plaintiff's "substantive due process" rights under the Fourteenth Amendment, even if Defendant provided false information that led to Plaintiff's arrest and prosecution without

probable cause.  *See Stockley v. Joyce*, 963 F.3d 809, 820 (8th Cir. 2020) (explaining that any deprivation of the plaintiff's liberty before his criminal trial, including arrest without probable cause, was governed by the Fourth Amendment and its prohibition on unreasonable seizures, not the Fourteenth Amendment); *see also Johnson v. McCarver*, 942 F.3d 405, 410–11 (8th Cir. 2019) (citing *Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017), *abrogating Moran v. Clarke*, 296 F.3d 638, 646–47 (8th Cir. 2002) (en banc)) (rejecting plaintiff's claim that "officers deprived him of liberty without due process of law by falsifying a report of his arrest"); *Matthews v. McNeil*, 821 F. App'x 666, 667 (8th Cir. 2020) (per curiam) ("The Supreme Court has been clear . . . that when a more specific constitutional provision like the Fourth Amendment applies, the substantive-due-process claim falls away.").

Count Two also fails in as much as it claims a violation of the Fourth Amendment because at the time the events of this case occurred, it had *not* been clearly established that Defendant Nikolov's alleged misconduct violated Plaintiff's Fourth Amendment rights.  Whether an individual's Fourth Amendment right to be free from unreasonable seizure continues beyond legal process so as to allow a malicious prosecution claim based upon the Fourth Amendment was raised, but left unanswered, by the Supreme Court in *Albright v. Oliver*, 510 U.S. 266 (1994).  Not until 2017, well after the events at issue in this case occurred, did the Supreme Court rule in *Manuel v. City of Joliet* that the Fourth Amendment "governs a claim for unlawful pretrial detention even beyond the start of legal process."  137 S. Ct. at 920.

Before *Manuel*, the Eighth Circuit, unlike some other Circuits, had not held that the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process.  *Id.* at 917, n.4; *see also, e.g.*, *Harrington v. City of Council Bluffs*, 678 F.3d 676, 679 (8th Cir. 2012) (remarking that "[i]f malicious prosecution is a constitutional violation at all, it

probably arises under the Fourth Amendment," and finding officers were entitled to qualified immunity on plaintiff's "Fourth Amendment malicious prosecution or prosecution without probable cause claims"). Because neither the Supreme Court nor the Eighth Circuit had established it,[13] a reasonable officer in Defendant Nikolov's position could not have known in 2015 that his alleged actions violated Plaintiff Morgan-Tyra's Fourth Amendment rights. *See Harrington*, 678 F.3d at 681; *see also Dillard v. O'Kelley*, 961 F.3d 1048, 1055 (8th Cir. 2020) (en banc) ("If a right does not clearly exist, it cannot be clearly established.").

Defendant Nikolov therefore is entitled to qualified immunity on Count Two in as much as it alleges a violation of the Fourth Amendment. *Harrington*, 678 F.3d at 681; *Bates v. Hadden*, 576 F. App'x 636, 639 (8th Cir. 2014) (per curiam) (concluding officer was entitled to qualified immunity on malicious prosecution claim under the Fourth Amendment where officer was alleged to have initiated a false criminal complaint that resulted in the plaintiff spending nearly five months in jail); *Jones v. Custer Cnty.*, 8:17-cv-00394-LSC, 2018 WL 2050568, at *7 (D. Neb. Apr. 26, 2018), *aff'd sub nom. Jones v. Bowers*, 784 F. App'x 976 (8th Cir. 2019) (per curiam) (concluding that existing precedent had not placed the question of whether or when malicious prosecution violates the Fourth Amendment beyond debate within the Eighth Circuit); *Busby v. Lohmar*, 4:14-cv-1365-CDP, 2016 WL 145763, at *4–5 (E.D. Mo. Jan. 12, 2016) (finding qualified immunity shielded officers from claim of malicious prosecution whether under the Fourth Amendment or a due process theory because the state of the law surrounding the cognizability of such a conspiracy at the time at issue was "so uncertain" that it cannot be said

---

[13] The Supreme Court has not decided whether a decision of the U.S. Court of Appeals can clearly establish something. *See D.C. v. Wesby*, 138 S. Ct. 577, 591 n.8 (2018) ("We have not yet decided what precedents—other than our own—qualify as controlling authority for purposes of qualified immunity." (citing *Reichle v. Howards*, 566 U.S. 658, 665–66 (2012) (reserving the question whether court of appeals decisions can be "a dispositive source of clearly established law"))). But the Eighth Circuit has found that one of its prior holdings "is sufficient to recognize a clearly established right." *See Dillard v. O'Kelley*, 961 F.3d 1048, 1056 (8th Cir. 2020) (Colloton, J., concurring) (citing *Chestnut v. Wallace*, 947 F.3d 1085, 1090 (8th Cir. 2020)).

that either officer would have understood that their actions violated any constitutional right to be free from malicious prosecution); *see also* Doc. [210-1] at 39 (Plaintiffs acknowledging there may have been "some prior confusion in the law among some Circuits" on this issue).

       *c. Count Three*

      In Count Three, Plaintiff Morgan-Tyra alleges a claim for conspiracy under 42 U.S.C. § 1985 against both Defendant Nikolov and the City.[14]   She alleges that Defendant Nikolov "conspired with the City of St. Louis and other officers of the St. Louis Metropolitan Police Department and acted in concert by way of an agreement to inflict the wrongs and injuries upon Plaintiff Morgan-Tyra . . . ." Doc. [37] ¶ 37.  Defendants argue that Plaintiff has no evidence of a conspiracy.  Regardless, Defendants further argue, the intracorporate conspiracy doctrine bars this claim, and Defendant Nikolov is entitled to qualified immunity on this claim.

      To establish a conspiracy under § 1985(3), Plaintiff must prove: (1) the existence of a conspiracy; (2) that the purpose of the conspiracy was to deprive him of his civil rights; (3) an act in furtherance of the conspiracy; and (4) injury.  *McDonald v. City of Saint Paul*, 679 F.3d 698, 706 (8th Cir. 2012).  Defendants correctly note that Plaintiff Morgan-Tyra has provided no

---

[14] The Second Amended Complaint makes clear that Count Three is a claim for conspiracy under 42 U.S.C. § 1985; it is not a claim for conspiracy under 42 U.S.C. § 1983.  Doc. [37] at 12 ("Plaintiff's cause of action against Defendants for conspiracy under 42 U.S.C. § 1985" (capitalization altered)); *id.* ¶¶ 1, 4; *see also supra* note 2.  The two conspiracy causes of action are not interchangeable.  *See Powell v. City of Jamestown*, 1:21-cv-721, 2022 WL 1913581, at *18 (W.D.N.Y. June 3, 2022) ("Conspiracy under § 1983 and conspiracy under § 1985 are distinct causes of action with different elements."); *see also Washington v. Hall*, 989 F.2d 508, 1993 WL 55948, at *2 n.1 (10th Cir. 1993) (unpublished table decision) (explaining that a "conspiracy claim under § 1983 requires the proof of different elements than a conspiracy claim under § 1985(3)").  Defendants, however, in their summary judgment briefing, consistently refer to Count Three as a § 1983 conspiracy claim, not a conspiracy claim under § 1985(3).  Doc. [193] at 12 (calling Count Three "a § 1983 conspiracy claim against all defendants"); *id.* at 54 (asserting that "Plaintiff's § 1983 conspiracy claim is barred by the intracorporate conspiracy doctrine"); *id.* at 55 (arguing that the Court should "apply the intracorporate conspiracy doctrine" established in the § 1985 context to the § 1983 context of Count Three).  For whatever reason, Plaintiff Morgan-Tyra did not address Defendants' mistake.  Rather, she went along with it.  *See* Doc. [210-1] at 50 (listing what a plaintiff must show to "establish a 42 U.S.C. § 1983 conspiracy claim"); *id.* at 53 (stating that "[c]ontrary to Defendant's assertion, it is clearly established that police officers have no right to conspire to violate constitutional rights free from Section 1983 liability").  Given that Defendants did move for summary judgment on this claim and did raise the intracorporate conspiracy doctrine as a ground for summary judgment, along with qualified immunity, the Court determines it can rule on summary judgment on that basis despite this confounding issue in the briefing.

- 18 -

evidence whatsoever of the existence a conspiracy.  Plaintiff maintains that she has offered "substantial evidence" that "the officers' version of events is false," and that the false narrative "formed the basis of [Morgan-Tyra] being charged with two felonies."  Doc. [210-1] at 51.  The "reasonable inference from these facts," Plaintiff says, "is that the officers were acting together to conceal and cover up Defendant Nikolov's excessive and otherwise unjustifiable use of force." *Id.*  That is the complete extent of Plaintiff's support for her § 1985 conspiracy claim in response to Defendants' argument that Plaintiff cannot produce evidence to support the necessary elements of conspiracy.

Courts regularly note that evidence of an agreement to deprive an individual of constitutionally guaranteed rights "typically is circumstantial." *See, e.g.*, *Livers v. Schenck*, 700 F.3d 340, 361 (8th Cir. 2012).  Because of this, summary judgment should only be granted on a conspiracy claim where "the evidence is so one-sided as to leave no room for any reasonable difference of opinion as to how the case should be decided." *Helmig v. Fowler*, 828 F.3d 755, 763 (8th Cir. 2016).  Here, Plaintiff Morgan-Tyra's claims against Defendant Nikolov and the City fail because she has presented only bare supposition and no evidence of any agreement to deprive Plaintiff of her civil rights between Defendant Nikolov, the City, and any others. *See id.*; *Robinson v. Hawkins*, 937 F.3d 1128, 1134–35 (8th Cir. 2019) (evidence that officers "enjoyed a close professional relationship" and that the incident report "included multiple material inaccuracies" were insufficient to support a reasonable inference of a conspiracy).

Additionally, as discussed in more detail below, the Court concludes that the intracorporate conspiracy doctrine bars this claim as to the City because the City cannot conspire with its own employees.  Further, even *if* the intracorporate conspiracy doctrine does not bar this claim as to Defendant Nikolov, the Court concludes he would be entitled to qualified immunity

here since it was not clearly established that covering up the use of excessive force would expose him to liability specifically for a § 1985 conspiracy claim.

By the terms of the statute, a claim under § 1985 requires a conspiracy.  42 U.S.C. § 1985 (each subsection beginning, "If two or more persons in any State or Territory conspire . . . .").  The Eighth Circuit has held "'that a corporation and its agents are a single person in the eyes of the law, and a corporation cannot conspire with itself' to violate 42 U.S.C. § 1985."  *L.L. Nelson Enters. v. Cnty. of St. Louis*, 673 F.3d 799, 812 (8th Cir. 2012) (quoting *Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1156 (8th Cir. 1983)).  "Under this intracorporate conspiracy doctrine, a local government entity cannot conspire with itself through its agents acting within the scope of their employment."  *Id.*  Thus, this conspiracy claim against the City fails.[15]

The Supreme Court "has not given its approval to [the intracorporate conspiracy] doctrine in the specific context of § 1985(3)," but it has noted that some "considerations suggest that officials employed by the same governmental department do not conspire when they speak to one another and work together in their official capacities."  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1868 (2017).  Since "the courts are divided as to whether or not a § 1985(3) conspiracy can arise from official discussions between or among agents of the same entity," it "demonstrates that the law on the point is not well established."  *Id.*  Because of that division, the Supreme Court determined that officials were entitled to qualified immunity on the § 1985 conspiracy claims against them.  *Id.*

---

[15] As the Eighth Circuit explained in *Kelly v. City of Omaha*, government agents can act within the scope of their employment duties even though a complaint alleges improprieties in the execution of these duties.  813 F.3d 1070, 1079 (8th Cir. 2016) (citing *L.L. Nelson Enters. v. Cnty. of St. Louis*, 673 F.3d 799, 812 (8th Cir. 2012) (holding that "[t]he referral of moving companies to property owners seeking the execution of evictions was within the scope of employment for deputies and staff members in the sheriff's office" even where employees used those referrals to execute a kickback scheme and to punish a moving company seeking to end that scheme); *see also Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1157 n.7 (8th Cir. 1983) (finding alleged acts of company's agents within the scope of their employment where those acts included making "false entries" in plaintiff's employment records, improperly denying the plaintiff overtime pay, and "physically batter[ing]" the plaintiff).

- 20 -

For the same reason, the Court concludes that Defendant Nikolov is entitled to qualified immunity on this claim that he conspired with his fellow officers.  *See Faulk v. City of St. Louis*, 30 F.4th 739, 750 (8th Cir. 2022) (concluding it was not clearly established that reasonable officers would have known with any certainty that "planning, designing, monitoring, or executing 'the illegal kettling plan' would expose them to damage liability" for a conspiracy claim); *Street v. Leyshock*, 41 F.4th 987, 990 (8th Cir. 2022) (concluding same); *see also Baude v. City of St. Louis*, 476 F. Supp. 3d 900, 915 (E.D. Mo. 2020) (finding that "officers could not have reasonably known their actions would open them up to liability for a conspiracy" despite plaintiff's argument "that his rights to be free from unreasonable seizure and excessive force were clearly established"), *aff'd sub nom. Baude v. Leyshock*, 23 F.4th 1065 (8th Cir. 2022).

     *d.   Count Four*

In Count Four, Plaintiff Morgan-Tyra alleges a claim against the City for failure to train, supervise, or discipline under 42 U.S.C. § 1983.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  The Court previously granted Defendants' Motion to Dismiss Count Four's theory of failure to train or supervise.  Doc. [53] at 13.  Only Count Four's theory of municipal liability based on a custom of excessive force survives.  *Id.*

The City cannot be liable on Count Four if Defendant Nikolov did not violate Plaintiff Morgan-Tyra's Fourth Amendment right.  *Webb v. City of Maplewood*, 889 F.3d 483, 487 (8th Cir. 2018) (explaining that "there must be an unconstitutional act by a municipal employee before a municipality can be held liable" (internal quotations omitted)); *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (rejecting municipal liability claim against a city because the officer did not violate the plaintiff's constitutional rights).  Similar to Count One, however, the

Court concludes that the City is entitled to summary judgment on Count Four without deciding whether Defendant Nikolov violated the Fourth Amendment.

While the City is a "person" that can be liable under 42 U.S.C. § 1983, the Supreme Court has made clear that the City "cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389 (8th Cir. 2007) (en banc) (citing *Monell*, 436 U.S. at 691). For § 1983 liability to attach to the City, Plaintiff Morgan-Tyra must show that a constitutional violation resulted from an official municipal policy or an unofficial custom.[16] *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). To establish liability based on an unofficial custom, Plaintiff Morgan-Tyra must show, *inter alia*, the existence of a "continuing, widespread, persistent pattern of unconstitutional misconduct by" police officers, the City's employees. *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018); *Parrish v. Luckie*, 963 F.2d 201, 204 (8th Cir. 1992) ("To establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action."). Here, Plaintiff Morgan-Tyra argues that the City has an unofficial custom of allowing its police officers to use excessive force based on the City's failure to investigate or discipline officers in response to a pattern of hundreds of excessive force complaints against officers.

To support her argument that the City's officers engage in a pattern of excessive force, Plaintiff Morgan-Tyra points, generally, to internal reports maintained by the police department

---

[16] Generally, a plaintiff can also establish liability under a failure to train or supervise theory; however, as mentioned, the Court previously dismissed that portion of Count Four. *See* Doc. [53] at 18; *Morgan-Tyra*, 2019 WL 5597094, at *4–5. While in that Memorandum and Order the Court did not dismiss the custom or policy portion of Count Four because it found Plaintiff could plausibly show a pattern based on the internal reports Plaintiff referenced, the Court did forewarn that it was "questionable" whether Morgan-Tyra would ultimately meet her burden in this case "because her complaint d[id] not describe in much detail the factual circumstances of the incidents giving rise to the prior excessive force complaints here, or the investigations relating thereto." *Id.* at *5. Despite this presage, Plaintiff failed at this stage to describe the incidents giving rise to the prior excessive force complaints, and, as discussed in this Memorandum and Order, a plain look at the descriptions of the prior complaints are not at all similar to the alleged excessive force here.

relating to complaints that police officers allegedly used excessive force and/or violated the use of force policy for the five-year period preceding the conduct at issue here.  *See* Docs. [223], [224].[17]  But to establish a pattern for § 1983 liability, the Eighth Circuit "requires a showing of more than general allegations of a wide variety of [police] misconduct.'"  *McGuire v. Cooper*, 952 F.3d 918, 923 (8th Cir. 2020) (rejecting custom claim where plaintiff failed to show prior incidents bore factual similarity to the incident at issue).  Similarly, "the mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging excessive force."  *Mettler*, 165 F.3d at 1205.

Instead, Plaintiff Morgan-Tyra must show sufficient factual similarity between the prior complaints and her experience to potentially show a pattern of excessive force.  *Mettler*, 165 F.3d at 1205 (noting "[e]vidence that a police department has failed to investigate previous incidents similar to the incident in question may support a finding that a municipal custom exists, and that such a custom encourages or allows officers to use excessive force without concern for punishment"); *McGuire*, 952 F.3d at 923 (explaining general allegations are insufficient and municipal liability under § 1983 "requires the other misconduct to 'be very similar to the conduct giving rise to liability'" (quoting *Livers*, 700 F.3d at 356)); *Rogers v. City of Little Rock*, 152 F.3d 790, 798 (8th Cir. 1998) (stating municipal liability under § 1983 requires the plaintiff to show the city had a policy or custom of failing to act "upon prior *similar complaints* of unconstitutional conduct," which caused the constitutional injury at issue (emphasis added)).

---

[17] Plaintiff also points to a report maintained by the Saint Louis Metropolitan Police Department's Department of Internal Affairs Statistics of complaints against officers relating to the following categories: Physical Abuse/Use of Force, Violation of Use of Force Policy, and Physical Abuse.  *See* Doc. [102-12].  This report consists of only numbers and statistics, devoid of any underlying facts of the alleged excessive force violations.  Without more, Plaintiff cannot use this report as evidence of a pattern for municipality liability.  *See Perkins v. Hastings*, 915 F.3d 512, 523 (8th Cir. 2019) (citing *Strauss v. City of Chicago*, 760 F.2d 765, 768–69 (7th Cir. 1985) (explaining that evidence that the police department sustained only six to seven percent of all registered complaints "indicate[d] nothing" without identifying what made the prior conduct illegal and without "show[ing] that a similar illegality was involved in [the plaintiff's] case" (internal quotation marks and citation omitted))).

Plaintiff Morgan-Tyra failed to discuss the underlying facts of the excessive force complaints in the reports, let alone discuss factual similarities between any of the prior excessive force complaints and Defendant Nikolov's alleged unconstitutional conduct here. Nonetheless, the Court, on its own accord, viewed the limited information supplied in the record. A majority of the prior excessive force complaints relate to physical abuse, such as officers punching, kicking, or hitting citizens in various parts of the body. *See* Docs. [223], [224]. There are also some complaints on the use of pepper spray, the use of a stun gun, the ripping of clothing, the hitting of vehicles, and of verbal abuse. *Id.* While the behavior in the complaints obviously is troubling, it is not factually similar to the excessive force claim by Plaintiff Morgan-Tyra. Of the few allegations that actually do involve the use of deadly force, specifically deadly force via a firearm, a majority of the complaints concern the conduct of off-duty police officers or officers firing at or from a moving vehicle. *Id.* Only one allegation—where an officer shot a suspect in the back while the suspect's hands were allegedly in the air—could possibly be considered factually similar enough to the case at bar. Doc. [223] at 5. But, even then, Plaintiff Morgan-Tyra fails to provide any evidence of the details of that incident or the investigation relating thereto, other than a snippet of the incident description that actually cuts off midsentence.[18] *See Perkins v. Hastings*, 915 F.3d 512, 522–23 (8th Cir. 2019) (rejecting a similar attempt to prove "custom" liability with evidence of other police shootings where there was insufficient evidence of the details of those shootings). Even assuming those details were sufficiently similar to Defendant Nikolov's conduct *and* that the on-duty officer's shooting in that prior complaint was unjustified, Plaintiff Morgan-Tyra still fails to show a pattern of unconstitutional conduct necessary for municipal liability. *Id.* (noting "one unjustified shooting does not establish a

---

[18] The only information in the record on this prior complaint of excessive force is: "Initial Description: [suspect] stated he was shot in the back by [officer]. Prior to being shot he placed his hands in the . . . " Doc. [223] at 5 (ellipsis in original).

pattern of constitutional violations"); *Brewington*, 902 F.3d at 802 ("[T]wo incidents of excessive force—even assumed to be true—cannot be considered a pattern of widespread and pervasive unconstitutional conduct.").

The Court therefore concludes that the City is entitled to summary judgment on Count Four because Plaintiff Morgan-Tyra failed to establish a pattern of constitutional violations necessary for her municipal liability claim. *Perkins*, 915 F.3d at 521 (explaining that to establish a municipal custom based on a failure to prevent police misconduct, a plaintiff must show that the municipality acted with deliberate indifference to the rights of persons with whom the officers come into contact, which itself requires a plaintiff to show a pattern of constitutional violations similar to the incident in question).

e.   *State Law Claims*

Since the Court has determined that Defendants are entitled to summary judgment on all federal law claims in this action, it will now determine whether to retain or decline jurisdiction over the remaining claims in this case, which all arise under Missouri state law. Plaintiffs assert a total of six counts of five unique causes of action under Missouri state law, and Defendants assert numerous defenses on those claims. Besides arguing that the claims fail on their merits, Defendants argue also that the claims are barred by sovereign immunity and are likewise barred by official immunity under Missouri law. Defendants further argue that four of the causes of action are barred by the applicable Missouri statute of limitation.

These state law claims are before the Court based on supplemental jurisdiction under 28 U.S.C. § 1367, which provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same

case or controversy." § 1367(a). When supplemental jurisdiction over a claim exists under § 1367(a), a district court may decline to exercise supplemental jurisdiction when the court has dismissed all claims over which it has original jurisdiction. § 1367(c). A district court's decision to exercise supplemental jurisdiction in such circumstances is "purely discretionary." *Carlsbad Tech., Inc. v. HIF BIO, Inc.*, 556 U.S. 635, 639 (2009). District courts should balance factors "such as judicial economy, convenience, fairness and comity in regard to exercise of supplemental jurisdiction over pendent state law claims." *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1249 (8th Cir. 2006). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Barstad v. Murray Cnty.*, 420 F.3d 880, 888 (8th Cir. 2005) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *accord Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009).

Finding no factor that distinguishes this case from the usual case in which all federal law claims are eliminated before trial, the Court declines to exercise supplemental jurisdiction over the remaining claims in this case under § 1367(c)(3) and will dismiss the remaining claims without prejudice. *See Gregoire v. Class*, 236 F.3d 413, 419–20 (8th Cir. 2000) ("'[W]hen state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law as a matter of comity.'" (quoting *ACLU v. City of Florissant*, 186 F.3d 1095, 1098–99 (8th Cir. 1999))); *see also, e.g.*, *Franks v. City of St. Louis*, 4:19-cv-2663-RWS, 2022 WL 1062035, at *10 (E.D. Mo. Apr. 8, 2022) (declining to exercise supplemental jurisdiction over

state law claims after disposing of federal claims on summary judgment); *Brown v. City of St. Louis*, 4:18-cv-1676-JMB, 2022 WL 1501368, at *7 (E.D. Mo. May 12, 2022) (same).

CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, Doc. [192], is **GRANTED** in part and **DENIED** without prejudice in part. The motion is granted as to Plaintiff Morgan-Tyra's claims arising under federal law, Count One through Count Four, and these federal law claims are **DISMISSED** with prejudice. The motion is denied without prejudice in all other respects.

**IT IS FURTHER ORDERED** that supplemental jurisdiction under 28 U.S.C. § 1367 is declined over Plaintiffs' remaining state law claims, Count Five through Count Ten, and these state law claims are **DISMISSED** without prejudice.

**IT IS FINALLY ORDERED** that all other pending motions in this case are **DENIED** without prejudice as moot.

An appropriate Judgment will accompany this Memorandum and Order.

Dated this 22nd day of September, 2022.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE